GEORGE W. BOWEN v. STEPHEN JOHNSON, Administrator.

The probate of a will in another state, is only *primâ facie* evidence of its validity, on an application to a court of probate in this state, to allow a copy of the same to be filed and recorded; art. 4, sect. 1, of the constitution of the United States not extending the operation of such a decree to things which, at the death of the testator, were without the territory of the state whose court has taken the probate.

Probate of a former will may, as a matter of practice, be revoked upon a mere application to a court of probate to prove or to allow to be filed and recorded a later will of the same testator, as incidental thereto; and it is not necessary that a preliminary and separate proceeding should be instituted for the purpose of such revocation, in order to the probate or filing and recording of the later will.

APPEAL from a decree of the court of probate of the town of Warren, made August 1, 1857, refusing to allow a paper, bearing date June 15, 1852, and purporting to be an exemplified copy of the will of William Bowen, late of Moravia, Cayuga county, New York, to be filed and recorded in said court as and for the last will and testament of said William.

At the trial before the chief justice, with a jury, it appeared, that the decedent, William Bowen, left two wills; one made at Warren, Rhode Island, where he was then resident, in October 1848, and the other, now propounded for allowance, of the later date of June 15, 1852, made at Moravia, N. Y., whither he had been removed, contrary to the expostulations of the appellee, his guardian, by the appellant, the residuary legatee and devisee and executor of the later will. Shortly after the death of William Bowen, the will first in date by him executed, was admitted to probate in Warren, by a decree of the court of probate of that town, dated May 6, 1854, and the appellee was appointed administrator on the estate of said William, with that will annexed. That decree was rendered upon due and legal notice, and after full hearing; the appellant appearing by counsel and contesting the decree, but taking no appeal therefrom.

In the mean time, the will of said William, of later date, was being contested in the courts of New York; having been admitted to probate by a decree of the surrogate of Cayuga county, N. Y., on the 19th day of May, 1854, which decree was, after a hearing before said court, on allegations against the proof of said will filed by one of the heirs-at-law of said William, and again upon a petition of appeal before the supreme court of New York, finally, by the order of said last-named court, affirmed by said surrogate's decree rendered on the 30th day of March, 1857. A duly authenticated copy of this will, and of the last named decree, which contained a recital of the prior proceedings in New York, was now presented to this court, as it had been to the court below, and was claimed by the appellant to be conclusive proof of the validity of the later will, as the last will and testament of William Bowen, by force of art. 4, sect. 1 of the constitution of the United States, and of the act of congress passed in pursuance of, and to carry out, the same.

The appellee, on the other hand, contended that this decree was of no force and validity out of the state of New York, which instituted the surrogate's court of Cayuga county, and by statute, of none in Rhode Island, until sanctioned by the decree of a court of probate here, allowing said will to be filed and recorded; that the surrogate of Cayuga had no jurisdiction to pass the decree; the decedent, William Bowen, being in fact a resident of Warren, Rhode Island, at the time of his death, and only casually, and against the will of his guardian, the appellee, and by the undue solicitations of the appellant, in Moravia at that time; that the will itself was procured by the fraud and undue influence of the appellant acting upon an aged and enfeebled man, under guardianship at the time of his improper removal to New York, on account of his incapacity to manage his affairs; and finally, that as a matter of practice, the court could not, whilst the decree of the court of probate of Warren of the date of May 6, 1854, approving the will of William Bowen of October, 1848, remained in full force, and except after proceedings instituted to revoke the probate of that will and the letters of administration grant-

10 *

ed to the appellee in consequence of it, allow the paper, purporting to be the will of William Bowen, and dated June 15, 1852, to be filed and recorded, or the hearing to proceed for that purpose.

This appearing to be the state of the controversy, it was suggested by the presiding judge, and acceded to by the parties, that, to bring the above questions before the full court upon a motion for a new trial, he should rule *pro forma* against the appellant, that the New York decree was not conclusive of the validity of the will of June 15, 1852, and that direct proceedings must first be instituted to revoke the probate of the will of 1848 and the letters granted by the court of probate of Warren, on the 6th day of May, 1852, if such proceedings should not be actually concluded before the appellant could be heard upon his application to have the paper purporting to be the later will of William Bowen filed and recorded.

Under such instructions, the jury returned a verdict that the will of which the copy and probate was produced to them, was not the last will and testament of William Bowen, and that said copy ought not to be filed and recorded in the probate office of Warren; whereupon, the appellant now moved for a new trial upon the ground of misdirection to the jury, in matter of law, in the above instructions.

*Bradley* and *James R. Cox* for the motion. Upon the question of practice we submit,—

1st. That the course adopted is in pursuance of the statute, which does not contain any exception or proviso such as the construction claimed on the other side would introduce.

2d. That it is the most convenient and reasonable course; for if the will now presented is admitted to probate, then it furnishes conclusive ground to set aside the first will. This motion presents a distinct and proper issue, while the other mode would present but indirectly the present issue; and a decision on that hearing would not legally conclude the present question. *Non constat* if the first will is set aside, that the second will be afterwards presented or probated.

3d. That this motion may be considered as one to vacate the first as well as to probate the second, such being the necessary legal consequence of the second probate.

4th. That the practice in other states accords with our views, *Shultz* v. *Shultz*, 10 Gratt. (Va.) 358, expressly adjudicating the point; *Campbell* v. *Logan*, 2 Bradf. (N. Y. Surrog. R.) 90, same question. Such is the practice in Rhode Island. The English practice, as stated by respondent, rests upon a single adjudication in modern reports. But a different practice is shown in England in later times. *Wilkinson* v. *Robinson*, 14 Jurist, 72, (7 Harrison's Digest, 555.)

Upon the second and third exceptions and reasons we submit,—

1st. That this being a motion to record a probate and not to prove a will, the probate offered should be received as conclusive upon the questions of capacity and fraud, and upon all other questions affecting the validity of the will. Probate is a proceeding *in rem*, and is conclusive against the world. It ascertains the original validity of the will as such, and that the instrument in fact is what it purports on its face to be. 2 Greenl. Ev. § 672; *Ex parte Fuller*, 2 Story, R. 327; *Plume* v. *Beale*, 1 P. Wms. 388; *Parker* v. *Parker*, 11 Cush. 519; *Poplin* v. *Hawke*, 8 N. H. 124; *Tompkins* v. *Tompkins*, 1 Story, R. 547.

2d. Probate is a judicial proceeding, within the meaning of the constitution of the United States, art. 4, sec. 1; 1 Greenl. Ev. § 505; *Balfour* v. *Chew*, 5 Mart. N. S. (La. R.) 519; *Loy* v. *Kennedy*, 1 Watts & Serg. 396; *Ohio* v. *Hinchman*, Am. Law Reg. Vol. 5, No. 7, p. 424. It is therefore only open to the same inquiry as to its validity as a judgment in ordinary cases, namely, that of jurisdiction. *Mills* v. *Duryee*, 7 Cranch, 481; S. C. 2 Am. Lead. Cas. 707, and notes, 719, 725; and jurisdiction will be presumed until the contrary appears. *Molony* v. *Gibbons*, 2 Campb. 502; *Shumway* v. *Stillman*, 4 Cowen, 296. So far as the question of jurisdiction depends upon the domicile of the testator, it is complete, from the fact that he was resident of Cayuga county, New York, at, and long previous to, the time of his death. This is domicile; for a man is *prîmâ facie* domiciled at the place where he is resident at the time of his death. *Berquier* v. *O'Daniel*, 1 Binney, 349; *Bruce* v. *Bruce*, 2 Bos. & Pull. 229; *Somerville* v. *Somerville*,

5 Ves. 750; *Pottinger* v. *Wightman,* 3 Meriv. 67; *The Venus,* 8 Cranch, 278.

3d. That the guardianship did not affect or qualify the actual domicile acquired by the testator in New York.

1. Because it was void, being a restraint upon him without due process of law. Amend. Const. U. S. § 5; Const. R. I. art. 1, § 10. See, also, Dig. 1844, p. 273, and the proceedings appointing a guardian in this case.

2. If valid, it was merely local in its operations, and its power and effect, if any, did not extend to New York. The domicile acquired by the testator there introduced a total change of his legal condition. He thereby became emancipated from the disability, if any, created by the guardianship here. It should seem, therefore, that for the purposes of domicile and probate, the *lex loci actûs* should obtain. Story, Confl. Laws, §§ 103, 499, 504, 594; *Morrell* v. *Dickey,* 1 Johns. Ch. 153; *Kraft* v. *Wickey,* 4 G. & J. 332.

3. The guardianship did not deprive the testator of the power to make his will. *Jenckes* v. *Court of Probate of Smithfield,* 2 R. I. 255; and it is submitted that there is nothing about such guardianship to prevent him from choosing his home.

*R. W. Greene,* against the motion.

*First.* The court of probate of Warren had jurisdiction to take the probate of the will of October, 1848, because the real and personal estate of the testator, on which said will would operate, were at the time of his death, and now are, in the said town of Warren. *Cassel's Adm'r* v. *Vernon,* 5 Mason, 334; *Picquet* v. *Swan et al.* 4 Mason, 443; Dig. of 1844, 223–230; Dig. of 1822, 211–221.

*Second.* That the decree of the court of probate of Warren, probating the will of October, 1848, being a decree of a court of competent and exclusive jurisdiction, and being rendered after notice, is final and conclusive until reversed on appeal. That such a decree is a bar to this petitioner. 1 Williams on Executors, 278–282, 359; Toller on Executors, 74–76; *Annesly* v. *Palmer,* 9 Mod. 8; *Taylor* v. *Tibbitts,* 13 B. Monroe, 181; Wentw. Office Executors, (14th ed.) 111, 112; *Parker* v. *Parker,* 11 Cush. 519; *Patten* v. *Tallman,* 14 Shep. 17; *Stone* v. *Peasly,* Law Rep. for January, 1856.

*Third.* The probate of a will is a decree *in rem*, and does not come within the 4th art. sect. 1, of the constitution of the United States and the act of congress. *Dublin* v. *Chadbourn*, 16 Mass. 433. In this case the court said, p. 441, " It seems very clearly the intent of the statute, that this, and every other objection to the validity of the will, should be heard and determined in the course of that proceeding in the probate court." The proceeding referred to was a petition to the probate court, to admit to record, in Massachusetts, a copy and probate of a will from New Hampshire.

The New York decree has no force out of that state; the copy of the will is open to all the objections on the petition to admit it to record in Rhode Island that could have been made to the original will, had it been offered here for probate. *Ives* v. *Allen*, 12 Verm. 589; 2 Kentucky Digest, p. 1004, art. 38.

Ames, C. J. This cause comes before us, upon a motion for a new trial, for the decision of two questions which are raised by it; *first*, whether as a matter of practice, a subsequent will, made and admitted to probate in another state, can be allowed to be filed and recorded here, without first revoking the probate of a prior will of the same testator, made by a court of probate in this state; and *second*, admitting that this may be done, whether the probate of the later will in another state, though taken subsequently to the domestic probate of the prior will of the same testator, is conclusive evidence of the validity of such later will, by force of art. 4, sect. 1, of the constitution of the United States. The appellant contends, that both these questions should be decided in the affirmative; notwithstanding the apparent inconsistency of holding, that a domestic decree of probate, unrevoked and unappealed from, is of no force to hinder a judicial act in derogation of it, whilst a foreign decree of probate is conclusive, and its merits cannot be inquired into, for the purpose of ascertaining whether a foreign will shall be filed and recorded here, so that it may operate upon real and personal estate within the jurisdiction of this state at the time of the death of the testator.

We propose to consider, first, the second of the above questions, as first in order of importance.

It is certain that our statute concerning the probate of wills, (Rev. Stats. ch. 155, §§ 5–10,) does not proceed upon the supposition that a foreign probate, or the probate of a will in another state, which are placed by it upon the same footing, are conclusive as to the validity of the will here, as a will either of real or personal estate; but, on the contrary, supposes, that neither is of any force to operate upon property here, except so far as the statute accords it to them. In this respect, our legislature pursues the course of legislation, common we believe to nearly all the states, of making the extra-territorial probate *primâ facie* evidence only of the due execution of the extra-territorial will, when proper proceedings are instituted here for its allowance and record; leaving it for those who upon the notice issued appear to object to the will, to show cause, if any they have, against the filing and recording of the same. We have already had occasion to consider, in the case of *Olney & others* v. *Angell, Adm'r, infra,* a case argued since, but decided before, the case at bar, the nature and effect of the probate of a will in a foreign court, or in the court of another state, when the will is introduced here as evidence of title to things within this state at the death of the testator; and see no reason to change our conclusion in that case, in application to a direct proceeding like this to give sanction and operation here to a will so proved, except so far as the statute authorizing the proceeding may require. The probate of a will is unlike a judgment between parties subject to the jurisdiction of the court rendering it, in this,—that being but a decree *in rem,* usually passed upon constructive notice only,—it is confined in its operation to things within the state setting up the court which takes the probate. It has been so treated, as we have seen,[1] in the country from which we derive our jurisprudence, and in general, at least by the courts and legislatures of our own. "Full faith and credit" is given to it abroad, when the same faith and credit is given to it which it has at home; and that is, that it is to be conclusive evidence of the validity of the will, as affording title to things within the jurisdictional limits of the court at the death of the testator, whether such title comes in contest within or

[1] Olney & others v. Angell, Adm'r, *infra.*

without those limits ; but, *de jure,* no evidence whatever of title to things not then within those limits.　The clause of the constitution of the United States referred to was not designed to extend the jurisdiction of local courts, or to extend beyond its just limits the operation of a local decree; but to provide a mode of authenticating evidence of the record of a judicial proceeding had in one state, so that the proper general result of it might be conveniently attained in every other state, against persons and things justly within the range of the proceeding. Notwithstanding this clause, a judgment in a suit between parties is, as such, void out of the state, as to parties not personally served, and not appearing to defend within the state whose court renders the judgment; although, if the suit be commenced by attachment of things within the state, it is, without such service or appearance, good as a judgment *in rem* against those things, to condemn them to satisfy the judgment.　As little does this constitutional provision extend the jurisdiction of a municipal court of probate to things beyond the limits of the state which sets it up, and is quite satisfied, in our judgment, " with leaving the probate of a will where it finds it, a decree local in its nature and operation."　*Olney & others* v. *Angell, Adm'r, infra.*

Upon this ground, therefore, we cannot grant a new trial of this appeal.

With regard to the question of practice, the *pro forma* ruling of which adversely to the appellant affords the other ground of his motion for a new trial, we feel at liberty, in the absence of any authority binding upon us, to decide it in the mode which, considering our circumstances, will the most directly lead to just results, with the least inconvenience to parties litigant. Our statutes nowhere recognize in express terms the power of our courts of probate to revoke a probate once granted by them ; leaving that just and necessary power to be implied from their general power to " take the probate of wills, and grant administration on the estates of deceased persons."　Rev. Stat. ch. 151, §§ 3 and 4.　No one can suppose, however, that such power of revocation does not exist in them ; else, if probate of a will be granted, and the time of appeal be passed, inasmuch

as their jurisdiction is exclusive, there would be no mode in which a later will of the testator, subsequently found, could be proved, without the inconvenience of having out, at the same time, conflicting authorities, issuing from the same source, and with regard to the settlement of the same estate. Now it would seem to be quite congruous with the statute mode of conferring this power of revoking the old probate, to wit, as incidental to the power of taking probate of the later will when discovered, for the court to exercise this power of revocation, as incidental to the new grant of probate, rather than to make it necessarily the subject of preliminary and separate action. Such a practice would save the delay and expense of double proceedings, and enable the court to revoke or modify the old probate, as the old will utterly conflicted, or was capable of partially standing with the new one. Notice of the petition for the probate, or for filing and recording of the new will, must necessarily be given to the parties interested under the old one; and the prayer of such a petition incidentally involves the revocation of the probate of the will of prior date, so far as such will conflicts with the provisions of the will of later date. We can perceive no danger of confusion or injustice in allowing this double, but dependent duty, to be performed by the court upon a mere petition for the probate of the later will; and its simplicity and directness commend it, as a matter of practice, in other respects, to our favor. Without doubt, the probate of the first will must stand as conclusive upon courts of common law and chancery, until revoked by proper proceedings in the appropriate court, as decided in *Annesley* v. *Palmer*, 9 Mod. 8; and in *Allen* v. *Dundas*, 3 T. R. 125, 129; *Prosser* v. *Wagner*, 38 Eng. L. & Eq. R. 201, 205; and the practice in the English ecclesiastical courts probably is, not, in general, to grant probate of the later will, until service of a citation, calling upon the executor of the prior will to bring it in for revocation. Yet this rule of practice is amenable to circumstances; and in the late case of *Wilkinson and Webster* v. *Robinson*, 14 Jurist, 72, probate of the later will was taken by the prerogative court, notwithstanding a decree, ordering the executrix of the former one to bring it in in order that the probate of it might be

revoked and that probate of the second will might be granted, could not be served upon her,—she residing in France, and avoiding service of the decree. The cases of *Campbell* v. *Logan*, 2 Bradford's Surrogate (N. Y.) Rep. 90, and of *Shultz* v. *Shultz*, 10 Gratt. (Va.) Rep. 358, cited by the appellant, are not only in point as to the exercise by courts of probate of the power of revoking the probate of a former will, as incidental to taking probate of a later one of the same testator, under legislation similar to our own, but, as we understand them, to do this upon a mere application to prove the later will. Without deciding, therefore, that such power of revocation may not be exercised upon a direct application to the court for that purpose, we have come to the conclusion that it may be exercised upon a mere application to take probate of, or to allow to be filed and recorded a copy of, the later will, as incidental thereto ; and that upon the ground of misdirection in this particular, a new trial must be granted to the appellant in this cause.